UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEPHEN L. LIPP,

                          Plaintiff,         **1:16-cv-00124-MAT**

                                                   **DECISION AND ORDER**

          -vs-

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,[1]

                          Defendant.

---

## I. INTRODUCTION

Represented by counsel, Stephen L. Lipp ("Plaintiff") has brought this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying in part his application for disability insurance benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

## II. PROCEDURAL BACKGROUND

As relevant to the instant action, Plaintiff filed a previous application for DIB on January 10, 2006, alleging disability as of August 2005. Plaintiff's application was denied by an administrative law judge ("ALJ") on June 3, 2008. Plaintiff appealed the denial of his application to this Court, which entered a decision affirming the Commissioner's final determination on May 7, 2013. *See Lipp v. Astrue*, No. 10-CV-0398 MAT, 2013 WL 1908036, at *1 (W.D.N.Y. May 7, 2013) ("*Lipp I*"). In particular, the Court found that "the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law." *Id*. at *10. This Court's decision was subsequently affirmed by the Second Circuit. *See Lipp v. Colvin*, 568 F. App'x 50, 50 (2d Cir. 2014).

On December 22, 2013, Plaintiff filed another application for DIB, alleging disability beginning June 4, 2008, due to a lower back injury, neck pain, possible cancer, and shoulder pain. Administrative Transcript ("T.") 101-102, 116. Plaintiff's application was initially denied and he timely requested a hearing, which was held before ALJ Timothy J. Trost on June 5, 2014. T. 22-39. In a letter from his attorney dated June 5, 2014, submitted after the hearing, Plaintiff requested that his alleged onset date be amended to August 29, 2005. T. 112.

On October 16, 2014, the ALJ issued a favorable decision finding that Plaintiff had been disabled as of June 4, 2008. T. 11-21.

However, the ALJ denied Plaintiff's request to amended his alleged onset date to August 29, 2005, noting that it had been "made at the eleventh hour." T. 15. The ALJ also stated that Plaintiff's request "invade[d] a period not within the [ALJ's] jurisdiction" because it was "the subject of a prior claim that is currently pending before the Second Circuit Court of Appeals." *Id.*

Plaintiff requested that the Appeals Council review the denial of his request to amend his alleged onset date. T. 9. Plaintiff's request for review was denied by the Appeals Council on February 8, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

## III. DISCUSSION

### A.  Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

**B. Plaintiff's Request to Amend his Alleged Onset Date was Barred by the Doctrine of *Res Judicata***

The sole issue in this case is whether the ALJ's denial of Plaintiff's request to amend his alleged onset date was erroneous. For the reasons discussed below, the Court concludes that Plaintiff's attempt to amend his alleged onset date to August 29, 2005, was barred by the doctrine of *res judicata*, and that the Commissioner's refusal to revisit her prior determination that Plaintiff was not disabled at any time prior to September 30, 2007, was proper.

Plaintiff contends that the ALJ's consideration of Plaintiff's request to amend his alleged onset date was "wrong in every assertion." Docket No. 6-1 at 15. First, Plaintiff argues that an ALJ has no authority to deny a request to amend an alleged onset date, but must instead "make a finding, based on substantial medical evidence, of what the onset date should be." *Id*. Second, Plaintiff notes that, contrary to the ALJ's statement, the Second Circuit's decision with respect to Plaintiff's prior DIB application was issued on June 3, 2014, approximately four months prior to the ALJ's hearing decision on October 16, 2014. Plaintiff further argues that, contrary to the Commissioner's argument, administrative *res judicata* does not bar consideration of his claim.

Plaintiff is correct that the ALJ's refusal to amend the alleged onset date to August 29, 2005, was based on a factual error. In particular, the ALJ's statement that Plaintiff's prior claim was pending before the Second Circuit was incorrect; in fact, the Second Circuit had issued a decision on June 3, 2014. Thus, the ALJ's stated rationale for declining to consider whether Plaintiff was disabled as of August 29, 2005, cannot withstand judicial scrutiny. The Court further agrees with Plaintiff that, under the applicable regulations, the ALJ was not free to simply deny Plaintiff's request to amend his alleged onset date due to it having been made after the hearing concluded. *See* Social Security Ruling ("SSR") 83-20, 1983 WL 31249, at *2 (S.S.A. 1983) (noting that a claimant may change an alleged onset date in "a letter" or "another document"); *see also McCall v. Astrue*, No. 05 CIV. 2042(GEL), 2008 WL 5378121, at *16 n.40 (S.D.N.Y. Dec. 23, 2008) ("[a] claimant is not necessarily bound by the statement made on the application form as to the onset date of [his] disability").

However, the Court's inquiry does not end here. The Commissioner argues that the ALJ's error with respect to the date of the Second Circuit's decision and his subsequent refusal to permit Plaintiff to amend his alleged onset date was harmless, because Plaintiff's request to amend his alleged onset date to August 25, 2005, was barred in any event by the doctrine of *res judicata.* For the reasons set forth below, the Court agrees.

"The doctrine of *res judicata* is properly applied to deny a benefits claim when the claimant has had a previous disability determination on the same facts and issues, and such determination has become final by either administrative or judicial action." *Amato v. Bowen*, 739 F. Supp. 108, 111 (E.D.N.Y. 1990); *see also* Social Security Hearings, Appeals and Litigation Law Manual ("HALLEX") 1-2-4-40 ("When a prior determination or decision with respect to the same party, facts, and issue(s) has become administratively final, the doctrine of administrative *res judicata* may be used to . . . refuse to consider an issue(s) on a subsequent application arising from the same title of the Act."). There are certain exceptions to the doctrine of administrative *res judicata*, such as where there is "new and material evidence" related to the previously adjudicated issues. *See* HALLEX 1-2-4-40(J).

Here, Plaintiff makes two arguments to support his contention that his claim is not barred by the doctrine of *res judicata*. First, Plaintiff attempts to circumvent the issue entirely by seeking to amend his alleged onset date before this Court. Plaintiff now argues that the appropriate onset date is June 8, 2007, and that this period falls outside the prior ALJ determination. The Court finds this argument unavailing. Plaintiff has not demonstrated that June 8, 2007, falls outside the time period previously adjudicated in connection with his earlier DIB claim. Plaintiff's argument relies on the fact that, in his prior case, the ALJ misstated his date last insured, identifying it as June 30, 2006, instead of the correct date of September 30, 2007.

*See Lipp I*, Docket No. 7 at 3 n.1. However, and as the Commissioner noted in her briefing in *Lipp I*, despite having misstated Plaintiff's date last insured, the ALJ considered all the medical evidence of record, including evidence after June 30, 2006, and through September 30, 2007, the actual date last insured. *Id*. As such, the Commissioner contended in *Lipp I*, and Plaintiff did not contest, that the ALJ's error was harmless and that there was no reasonable possibility that the ALJ's determination would have changed had he not made this mistake. *Id*. The Court's decision in *Lipp I* upheld the ALJ's determination despite this error, and concluded that the determination that Plaintiff was not disabled prior to his date last insured (September 30, 2007) was supported by substantial evidence. Accordingly, there is no basis for Plaintiff to now argue that the judicial decisions affirming the Commissioner's prior determination were limited by the erroneous date last insured stated by the ALJ.

Plaintiff's second argument is that the doctrine of *res judicata* does not apply because there is new and material evidence tending to show that he was disabled as of June 8, 2007. In particular, Plaintiff points to additional reports from Plaintiff's treating physicians, including his orthopedic surgeon, his neurosurgeon, and his pain specialist, that were not before the ALJ who determined his initial DIB application. The Court has reviewed the evidence identified by Plaintiff and finds that it is not new and

material so as to warrant an exception to the otherwise applicable doctrine of *res judicata*.

Under the Commissioner's regulations, evidence is "new" if it is "not merely cumulative of what is already in the record" and it is "material" if it is "relevant to the claimant's condition during the time period for which benefits were denied and probative." *Geracitano v. Callahan*, 979 F. Supp. 952, 958 (W.D.N.Y. 1997). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

In this case, the evidence identified by Plaintiff as allegedly "new and material" does not demonstrate that he was disabled as of June 8, 2007. While the record does show that Plaintiff underwent shoulder surgery on that date (*see* T. 234), the surgery was performed without complication, and orthopedic surgeon Dr. Michael Grant's notes from immediately thereafter indicate that Plaintiff was comfortable, that his surgical wounds healed well, and that his passive range of motion was improving. T. 230-33. Moreover, the Court's decision in *Lipp I* indicates that the ALJ who decided Plaintiff's initial DIB claim had reviewed and considered Dr. Grant's treatment notes, including multiple physical examinations of Plaintiff. *See Lipp I*, 2013 WL 1908036, at *6 ("[U]pon physically examining Plaintiff, Dr. Grant repeatedly noted that Plaintiff was 'weak' and exhibited 'tenderness

to resisted motion,' but also consistently failed to describe the clinical degree of Plaintiff's weakness. Further, Dr. Grant's physical exams consistently confirmed that Plaintiff's range of motion improved passively.") (internal citations omitted).

With respect to the lumbar spine surgery Plaintiff underwent in April 2006, neurosurgeon Dr. Jeffrey Lewis stated on March 9, 2007, that Plaintiff was "fully recovered" from this surgery and that a CT scan showed a "solid fusion through and around the cages at L5-S1 with a stable slight Grade I spondylolisthesis." T. 183. Plaintiff has not identified any evidence that his lumbar spine surgery in April 2006, rendered him disabled as of June 8, 2007. In addition, as with Dr. Grant's treatment records, the decision in *Lipp I* makes it clear that the original ALJ considered treatment notes from Dr. Lewis. *See Lipp I*, 2013 WL 1908036, at *6 ("[I]n December 2005, Dr. Lewis assessed that Plaintiff's sensory exams were unremarkable and his deep tendon reflexes were normal bilaterally. He noted no myelopathic findings, and shortly thereafter released him to return to 'light duty' work.").

Turning to the treatment records from nurse practitioner ("NP") and pain specialist Ellen Battista, nothing in NP Battista's notes indicates that Plaintiff was disabled as of June 8, 2007. To the contrary, when NP Battista evaluated Plaintiff on June 13, 2007, she was unable to evaluate Plaintiff's pain because of his recent surgery. T. 415. At his next visit on June 29, 2007, NP Battista indicated that Plaintiff's prognosis was fair and recommended that he consider

physical therapy. T. 417. On July 11, 2007, Plaintiff was seen by NP Battista and claimed to have lost all of his pain medications by leaving them on a bus. T. 418. NP Battista refused to replenish Plaintiff's allegedly lost medications. *Id*. On July 31, 2007, NP Battista recommended that Plaintiff consider behavioral pain management and again indicated that his prognosis was fair. T. 419. Plaintiff has offered no explanation for how these benign notes from NP Battista could reasonably be expected to have changed the ALJ's determination.

To the extent that Plaintiff contends that the ALJ's decision would have been changed by additional statements from Drs. Lewis and Grant that he was "totally disabled," that argument is without merit. As this Court set forth in *Lipp I*, the ALJ who denied Plaintiff's initial application for DIB expressly considered statements by Drs. Lewis and Grant that Plaintiff was "totally disabled." *See Lipp I*, 2013 WL 1908036 at *5 (noting that "the ALJ did not ignore [Drs. Lewis and Grant's] opinions of total disability altogether, but rather, found that they were not entitled to great weight"). The Court upheld this determination, explaining that the ALJ properly found the treating physicians' statements were "either limited to the claimant's past work as a roofer or . . . based on the claimant's subjective complaints." *Id*. That same reasoning applies with equal force to the additional statements by Drs. Lewis and Grant now relied upon by Plaintiff, and there is no reasonable possibility that they would have changed the ALJ's determination.

For the foregoing reasons, the Court concludes that the materials identified by Plaintiff do not constitute "new and material" evidence such that the doctrine of *res judicata* does not apply. Accordingly, the Court finds the ALJ's error regarding the date of the Second Circuit's decision was harmless, and concludes that the Commissioner's refusal to revisit the issue of whether Plaintiff was disabled as of August 25, 2005 (or alternatively June 8, 2007, as Plaintiff now claims) was proper.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 6) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 11) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**

                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    June 8, 2018
             Rochester, New York